UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
ADAM ZAKAMAREK and DANUTA ZAKAMAREK,

                          Plaintiffs,

          -against-

BANK OF AMERICA, N.A. and
JOHN DOES 1 THROUGH 10,

                          Defendants.
-------------------------------------------------------------------------x

Case No.:

**COMPLAINT**

Jury Trial Requested

PLEASE TAKE NOTICE that the Plaintiffs herein by Kenneth S. Pelsinger, Esq., an attorney duly admitted to practice before the United States District Court, Eastern District of New York, as and for their Complaint against Defendants respectfully allege as follows:

## BACKGROUND

1. This action for declaratory and injunctive relief and other relief is brought by Plaintiffs against Defendants related to a mortgage loan in the amount of $640,000.00 executed and delivered by Plaintiffs to Countrywide Bank, N.A. (hereinafter referred to as "Countrywide"), on or about September 8, 2006, and secured by the subject premises known as and located at 1627 Peoples Creek Road, Advance, North Carolina (hereinafter referred to as the "property", "premises" or "subject premises").

## INTRODUCTION AND STATEMENT OF THE CASE

2. Defendant, BANK OF AMERICA, N.A. (hereinafter referred to as "BANA") commenced an action in the Superior Court located in Davie County, North Carolina (hereinafter referred to as the "Superior Court action" or "foreclosure action") seeking to foreclose the mortgage given by Defendants to BANA's alleged predecessor in interest, Countrywide, and secured by the subject premises, claiming it is the holder and owner of the mortgage and note.

However, there is no evidence whatsoever that BANA was ever legally assigned or transferred the alleged mortgage. Furthermore, Defendant is neither in possession of nor the owner and holder in due course of the corresponding mortgage note because said note was separated from the mortgage, securitized and sold and transferred into a mortgage pool. This case also involves a debt collection scheme. Plaintiffs seeks to obtain declaratory relief and injunction enjoining Defendants from continued engagement and use of deceptive acts and practices that this court is authorized to enjoin under but not limited to 28 U.S.C. § 2201.

## PARTIES, JURISDICTION AND VENUE

3. At all relevant times, Plaintiffs were and remain husband and wife residing at the subject premises in the County of Davie, State of North Carolina.

4. At all relevant times, Plaintiffs were and remain the titled owner of the subject premises. Plaintiffs are home owners and consumers and Plaintiff, ADAM ZAKAMAREK, is the signatory of the commercial paper secured by the subject premises that is subject to this Complaint. Plaintiffs are immigrants to the United States whose first language is Polish not English.

5. At all relevant times, BANA was and remains a national banking association organized under the laws of the United States of America authorized to do business in the State of New York with its principal place of business located at 7105 Corporation Drive, Plano, Texas, 75024.

6. That the true names of Defendants, JOHN DOES 1 THROUGH 10 (hereinafter referred to as "JOHN DOES"), inclusive, are unknown to Plaintiffs at this time. Plaintiffs sue those Defendants by such fictitious names. Plaintiffs are informed and believes, and based on that information and belief alleges, that each of the Defendants designated as a JOHN DOES is legally

responsible for the events and happenings referred to in this Complaint, and unlawfully caused the damages to Plaintiff alleged in this Complaint.

7. This Court has personal jurisdiction over the Defendants pursuant to New York State C.P.L.R. §302.

8. This declaratory action is proper in this Court pursuant, but not limited to, 28 U.S.C. §§ 1331, 1332, 1338, 2201 and 2202. This Court has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. §1367.[1]

9. Venue in this District arises for multiple reasons within the scope and meaning of 28 USC §1391(b). Qui Tam venue also arises for cause because of the continuation of the violations of the Federal securities laws and may the court's jurisdiction in nature of a Qui Tam relation with the court authorized to issue injunctions pursuant but not limited to, Title 15 U.S.C. 53(b) and under New York law GBS § 349. The request for issuance of the preliminary and permanent injunctions against Defendants are appropriately issued by this court enjoining them from continuing to engage in the accounting and other financial fraud practiced under color of authority.

## GENERAL AND FACTUAL ALLEGATIONS

10. BANA does not lawfully or rightfully own or hold the note or mortgage or any title interest in the Plaintiff's property.

11. BANA is the Plaintiff in the North Carolina foreclosure action commenced against Defendants. BANA manufactured and used a false complaint and other fake and counterfeit

---

[1] Ancillary jurisdiction arises because there is probable cause for this court's exercise of qui tam jurisdiction under but not limited to Sections 2l(d), 2l(e) and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u(e) and 78aa]; and/or 26 IRC 860G *et seq*.

records to enable the North Carolina Superior Court to act upon the fake and counterfeit records and obtain a judgment of foreclosure and pending order for sale of the subject premises.

12. Plaintiffs asserts that BANA has violated and will continue to violate New York and Federal laws and has engaged in deceptive business practices. Upon information and belief Plaintiff asserts that Defendant has violated Federal securities laws.

13. Upon information and belief Plaintiff asserts that BANA advertised in New York, North Carolina and elsewhere, that it owned and held the note and mortgage since June 2012 pursuant to an assignment of mortgage from Mortgage Electronic Registration Systems, Inc. (hereinafter referred to as "MERS") when in fact there is no evidence whatsoever that it owns and hold the mortgage and original "wet inked" promissory note and that BANA has been making materially misleading statements in the North Carolina Court and before federal regulatory bodies about and ownership of the mortgage and note.

14. That is, the ownership representations beginning in 2012 in the subject foreclosure action before the purported assignment of mortgage, are impeached or discredited by the fact that the Plaintiff's property was not acquired pursuant to the assignment of mortgage which is now causing Plaintiff damages and injuries by way of the deceptive and misleading advertisements and claims about the BANA's lawful ownership made in public, made to the United States and made against her in debt collection proceedings.

15. Upon information and belief Plaintiff asserts that this Defendants have failed to comply with Generally Accepted Accounting Principles (GAAP) and FAS 140 in that it purports to have purchased or a sale was done and title or transfer was made or that it accepted a deposit of a mortgage and note.

16. Defendants also know or should reasonably know that there was in fact no such valid or true sale being another reason the transaction is void on its face and was reasonably known to have been void when the claims were made.

17. Beginning in April 2012 and continuing to the present time in New York, North Carolina and elsewhere, BANA is asserting it has or had a title interests it does not have. In doing so it has advertised in New York that owned the same when it did not and has engaged in deceptive business practices to conceal and cover BANA's lack of subject matter jurisdiction.

18. BANA purports that it hold or own Plaintiff's note and mortgage. This claim is believed to involve federal securities. Federal securities laws are believed to exclusive to federal jurisdiction and may operate to preempt state regulatory laws and preempts the North Carolina foreclosure action.

19. The assertion of ownership is believed to be derivative of or is based upon the assignment of mortgage in June 2012 after commencement of the foreclosure action by BANA against Plaintiffs. In fact, not only was the mortgage allegedly assigned after the foreclosure action was commenced, but also MERS had no authority to acquire or transfer the note nor mortgage to BANA.

20. Defendants are evading federal law and legal requirements and is believed to have filed false statements or reports with the United States.

21. BANA is not acting as a "Bank" in this instance but rather it is acting as a debt collector.

22. This debt collection is being undertaken under color of state law or authority. This debt collection is believed to have been initiated upon or by and through the use of BANA's deceptive or misleading practices.

23. The Defendants a have and continues to falsely represent that the mortgage and note were lawfully transferred or timely delivered or transferred to BANA in 2012. Unless enjoined Defendants will proceed to execute said sale in direct contravention of the New York and North Carolina laws, and other violations of state and federal laws.

24. Upon information and belief, BANA also attempted to assign or transfer an unqualified mortgage and note to other third parties.

## As and for a First Cause of Action

25. All prior paragraphs are incorporated by reference.

26. By virtue of the foregoing and the facts Plaintiffs have shown or established probable cause sufficient to support a finding that Defendants have materially failed in its compliance measures with GAAP, FAS 140, true sale requirements and have engaged in other violations of Federal Securities laws sufficient to warrant a finding of probable cause for penalty assessments upon which Plaintiff would receive an award pending or upon such assessments as authorized under, but not limited to, provisions of Dodd Frank Wall Street Reform acts in nature of a probable cause finding under but not limited to, 17 CFR § 240.10b5.

## As and for a Second Cause of Action

27. All prior paragraphs are incorporated by reference.

28. A controversy arises and exists between Defendants and Plaintiff in that Defendants through its affiliates and agents who are operating as debt collectors.

29. Plaintiffs declares that they entitled to bring such a civil action against a person for violating North Carolina debt collection laws. Defendants have violated and continue to violate North Carolina debt collection laws in that they have claimed, threatened and are attempting to

enforce an obligation or are engaging in a debt collection scheme when they knew or reasonably should have known the debt claims are fake, fabricated and illegitimate.

30. Defendants and other affiliates have and will continue to assert the same unless enjoined or prohibited from using a fatally defective and contradictory complaint and other documents in public and judicial proceedings which documents were generated, uttered and or used in commerce so they could and would pretend there is a lawful basis for obtaining a judgment of foreclosure and a sale order.

31. By this pretext, Defendants so asserting the claim or existence of a debt owed to them by Plaintiff. These activities were undertaken taken collectively, severally and jointly by defendants under color authority on arguably known false records made to pretend the existence of a debt to them which they are attempting to collect by simulation in direct violation of North Carolina, New York and Federal debt collection laws. Defendants knew or should know from their own indenture instruments, and after assessments of billions of dollars in fines and civil penalties that the assignments are robo-signed, involve fraud, and are not legitimate.

32. Defendants also used and are using communications that is intended to simulate legal and/or judicial processes or that gives or gave the appearance of being authorized when it was not.

## As and for a Third Cause of Action

33. All prior paragraphs are incorporated by reference.

34. Defendants made and continues to make the statements in connection with the conduct described herein, Defendants, directly or indirectly, made statements and used the means or instrumentalities of interstate commerce, or the U. S. Mails and/or the facilities of a National exchange.

35. The Defendants is using the state court or a state jurisdiction as the "enterprise" to engage in illegal debt collection activities and steal the Plaintiffs' property.

36. Defendants are using an administrative contrivance that amounts to aiding and abetting in illegal debt collection. North Carolina courts are being used to administrate questions and issues that relate to federal debt collection jurisdictions.

37. This scheme uses a state's general authority and in doing so violates state and federal debt collection laws where it habitually and routinely misrepresents the status and character of the debt where there is strict liability and no immunity for such material misrepresentations in a debt collection as decided by the United States Supreme Court in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA et al.*, 559 U.S. ___ (2010).

38. The debt collection practice is an abuse "racket" being cloaked under the cover of judicial proceedings that somehow purports to allow the Defendants the right or power to adjudicate federal securities matter with fake or counterfeit complaints and/or and void assignments, held under a state general authority or the pretense of a debt collection or under color of a foreclosure jurisdiction on federal law.

39. There is no unification of the mortgage and note established by the unlawful and belated attempt to convey the note and mortgage. It is also highly improbable that the mortgage and note were actually transmitted to the North Carolina Superior Court with the assignments indicating additional and material misrepresentations shown on the face of the assignment.

### As and for a Fourth Cause of Action

40. All prior paragraphs are incorporated by reference.

41. Federal Declaratory review and injunctions are appropriate here under 42 U.S.C. §§ 1983, 1988(a) and 28 USC § 2201, along with other constitutional equal protection and due process standards thereby implicated.

42. The state proceeding utterly have failed in consideration of the important federal interest and the likelihood of a federal preemption of its present conduct or allowance of the defendants here to use its administrations under color of such authority.

43. As a general rule, a federal court has a "virtually unflagging obligation" to adjudicate controversies properly before it. *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988). In carrying out this duty, federal courts "may well affect, or for practical purposes pre-empt" a pending state court action, but "there is no doctrine that . . . the pendency of state judicial proceedings excludes the federal courts." *New Orleans Pub. Serv. Inc.("NOPSI") v. Council of New Orleans*, 491 U.S. 350, 373 (1989). To the contrary, a pending action in state court is generally "no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colo. River Water Logan v. U.S. Bank 7 Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

44. The most recent North Carolina foreclosure court proceeding was to obtain an order of sale.

45. These actions and the continued pretext violate federal regulatory and REMIC polices and fraud on the public and may be enjoinable.

46. Article III standing is an issue often arising on the "cutting edge" of new forms of litigation, such as citizen environmental lawsuits. In such suits, the United States Supreme Court has defined "the irreducible minimum of standing" to mean that:

> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) actual or imminent, not conjectural or hypothetical.... Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

47. Plaintiffs contend that, under the Fourteenth Amendment, due process of law requires that any suit (such as a mortgage foreclosure suit) seeking to deprive any natural person of his or her life, liberty, and property interests in his or her home must, as a matter of elemental due process, be brought by an injured party with what has come to be called "Article III Standing" in the Federal Courts. Plaintiffs ask that if such is the case that 42 U.S.C. §§ 1981 and 1982 as constructed have been construed in a constitutionally inform manner the courts are apparently incompetent to address certain and peculiarly federal issues with an intentionally discriminatory animus favoring banks and other financial persons and similar legal entities persons (banks and financial corporations and similar legal entities), Plaintiff asks this Court to apply 42 U.S.C. §§ 1981-1982 against the Defendants for unlawful discrimination that intentionally favors artificial or banking persons over natural citizens to give them standing when it is apparent that no such standing exists and was manufactured by deception and fraud in the court and upon the public.

48. To the extent that North Carolina procedural rules are being bent to accommodate fraud which such statutes have been or are to be read and construed to mean that all persons, natural or unnatural, white, black, brown, red, or yellow, male or female, shall be subject to the same laws (and the same application and construction of laws, rules and Regulations relating to "the making, using, uttering of false or counterfeit records so as to be able to conduct a foreclosure. That is, the discrimination is being done or practiced by a construction and interpretation to allow fraud which fraud is being ratified through the North Carolina foreclosure case, and/or will be ratified as a practice for Defendants as a standard operating procedure.

49. Plaintiffs ask this Court to declare and adjudge that no state may permit and/or excuse the practice of fraud upon the court through a Plaintiffs that lacks standing from inception

and that Defendants pay costs of suit, expert, and attorneys' fees as allowed by 42 U.S.C. §§1988(b)-(c).

## As and for a Fifth Cause of Action

50. All prior paragraphs are incorporated by reference.

51. BANA violated the federal false claims acts. It alleged in its North Carolina foreclosure action that it is the owner and holder of the mortgage and note by operation of the *ex post facto* assignment, false affidavits and failure of compliance.

52. As a result of the acts and conduct described in the forgoing paragraphs a substantial controversy exists between Plaintiff and Defendants sufficient to warrant the issuance of a declaratory judgment finding that the Defendants are subject to issuance of an order to compel production of accounting, tax assessments and further injunctive decree against it and its attorneys prohibiting them or it from such further debt collection practices and conduct.

## As and for a Sixth Cause of Action

54. All prior paragraphs are incorporated by reference.

55. Defendants along with others to be discovered and named through the assignment and securities "washback" scheme, a scheme which was motivated by the desire of CHL Mortgage Pass-Through Trust 2006-8 (hereinafter referred to as the "Trust") to appear as a Real Estate Mortgage Investment Conduit (hereinafter referred to as "REMIC") to avoid large year-end tax payments and/or to make it appear that there were "true sales" by and through the artifice and device of an assignment of mortgage they knew was false failed for a want of true consideration. Defendants knew the statements were misleading when the statements were made.

56. Defendants made and continue to make the statements in connection with the conduct described herein, Defendants, directly or indirectly, made statements and used the means

or instrumentalities of interstate commerce, or the U. S. Mails and/or the facilities of a National exchange.

57. All Defendants would and did use void or counterfeit assignments that expose the reality that they are engaging in and structuring a conspiracy to violate tax laws of the United States, debt collection laws of New York and the United States, and to deceive and mislead the Plaintiffs, the Public, credit default swap parties and others into believing that such an assignment could lawfully transfer an interest to the Trust or its Trustee well after the closing of the trust.

57. BANA would then "book" these records or "valuations" to sustain or increase their stock prices when defendants know or should have known the 2012 assignment of the mortgage after the foreclosure action was commenced did not and does not meet general accounting requirements of FAS 140 or GAAP principals indicating there was a "true sale" for value as represented and/or in the alternative establishes the certificates were fraudulently issued.

58. These facts alone are suggested to be sufficient to warrant a finding of probable cause for issuance of an injunction and ordering of a referral to the SEC for administrative hearing requested by Plaintiffs on violations of, but not limited to Federal securities and REMIC fraud.

59. This scheme uses a state's general authority that has been preempted and in doing so violates state and federal laws where it habitually and routinely misrepresents the status and character of the debt where there is strict liability and no immunity for such material misrepresentations.

60. The practice is an abuse "racket" that somehow purports to allow the Defendants the right or power to adjudicate federal securities matter with fake or counterfeit and void assignments, held under a state general authority or the pretense of a debt collection or under color of a foreclosure jurisdiction on federal securities. This is not the case and it is an abusive

deception. The "securities" or accrued rights as claimed to be "held" are not one in the same within the New York state jurisdiction over a power sale clause or the "foreclosure or debt collection jurisdiction to which defendants are not parties on the original instruments and are attempting to get there by the fake and false records and use of materially misleading and known false statements regarding a conveyance styled as an assignment of the note and mortgage long after the closing of the Trust and not made by the identified depositor for the Trust.

61. Plaintiffs suggests the same is preempted for at least two primary reasons: There is no unification of the mortgage and note established by the unlawful and belated attempt to convey the CEMA note and mortgage shown on the face of the assignment, and 2) the matter is a subject of a federal securities jurisdiction simply by the name or style of the caption implicating the specific preemptions of 15 USC §§ 77-r1.

62. This suggest cause for the finding that there is a deceptive practice and fraud being practiced by the Defendant, the Trust, and its affiliates who are doing so for the benefit of themselves and the Trust under color state law in the face if a securities jurisdiction preemption.

63. As a matter of law and contrary to Defendants' misleading assignment representations it could not and did not acquire any authority to act nor did or do defendant debt collectors acquire any lawful title interest which is disproven on the face of their bogus assignment (let alone good and marketable title under these facts and circumstances) and thus the foreclosuret action and any future foreclosure action is the enterprise through which the Defendants are executing the deception.

64. It is self evident from the face of the record admitted or offered (or the lack of evidence) by BANA in the foreclosure action that Defendants are not and never were a party to

the mortgage or note and therefore may not claim the so called rights of someone else and are subject to the ouster by issuance of the requested injunction.

65. The Defendants' claim of a title interest or ownership by and through the hearsay and falsification of records purporting to make a transfer is based in fraud, misrepresentation and other misconduct. It is one of the several overt acts in support of the conspiracy to avoid tax liabilities along with the self evident federal preemption to float the proposition it has obtained a title through a robo-signed document then use and utter that and other documents in a judicial foreclosure as if that could or would obtain somehow provide them with a title interest through a foreclosure is to admit to the use of the state courts to launder money, conceal tax evasion, engage in false accounting and cover the REMIC and securities fraud.. All of this is being under taken under color of state law for purposes of civil rights violations, tax evasion, permitting and allowing the looting of the American tax payers, and Plaintiff to conceal the patent REMIC and securities fraud so Defendants can profit thereby and all of which is subject to issuance of a summary injunction.

66. Defendants operating through the enterprises of the North Carolina Superior Court are pretending to hold authority to take of property to the TRUST, which it is using to improve the trusts or the Trustee's financial results by falsely claiming there is a REMIC and/or by failing to report and pay money to the United States on the income and revenues received via the "title wash back scheme" cloaked as a "debt collection or a "foreclosure."

67. By engaging in the conduct described in this Complaint, Defendants aided and abetted the violations of, but not limited to CFR Sections 24010(b) (5) by and through the section defining deceptive and misleading practices done in connection with the sale promotion of

securities that in fact are premised in fraud or otherwise don't exist as a result of the confession of the assignment years after the issuance of the certificates.

68. These individuals and entities have and continue to directly caused injuries in a securities fraud scheme. Plaintiffs charge them as aiders and abettors to the scheme.

69. Defendants know and have knowledge of a fraudulent assignment scheme. Furthermore, the transfer of the mortgage and note competent under any stretch of the REMIC and securities jurisdictions.

70. Defendants should be charged as persons who are assisting and otherwise are aiders and abettors to insider trading, securities fraud, tax evasion among other deceptive practices and schemes undertaken on behalf of their clients because their actions are part and parcel of the "proximate cause" of tax payer loses, and injuries to plaintiff and the use of his or her identities to profit themselves and even if it isn't there is a question to "proximate cause" still liability of the harm resulting from the fraudulent activity which allows the court or the Court to compel the SEC to issue the cease and desist order or for this court to issue the injunction to deter the present fraudulent behavior by the companies, their executives, affiliates and debt collection counsels and attorneys. These Defendants have knowingly, recklessly are providing substantial assistance to a primary violators of the securities laws.

71. All of this was done by Defendants in direct violation of Federal and New York law to pretend Defendants could collect on said debt, and obtain benefits and otherwise engage in numerous unlawful and tortuous, and obtain insurance or insurance type payouts and/or claim and accept TARP Act or other Federal monies to the harm an injury of Plaintiffs' reputation, credit and standing in the community in addition to other damages and costs.

## RESERVATION OF RIGHTS

72.     Plaintiffs reserve their right to amend this Complaint and to raise and rely upon any additional claim or cause of action that they determine during the course of discovery is appropriate and applicable to the within action.

## JURY DEMAND

73.     Plaintiffs demand a trial by jury on all issues so triable.

WHEREFORE, Plaintiffs pray for:

(a) A declaration that Plaintiffs do not and did not owe Defendants any money or either directly or indirectly,

(b) A declaration that the subject mortgage loan and alleged note obligation are null and void.

(c) A return of any payments made to Defendants pursuant to the subject mortgage loan and alleged note obligation;

(d) A declaration that each and any claim of assignment or transfer of the mortgage and note is invalid;

(e) An order that Defendants and each of its officers, employees, agents, attorneys, and any persons in active concert or participation with them are restrained and enjoined from further prosecuting or instituting any action against Plaintiffs in the Superior Court, Davie County, North Carolina;

(f) An award to Plaintiff of his costs and attorneys' fees; and

(g) Such other relief as this Court or a jury may deem proper and just under the circumstances.

Dated: December 9, 2014                                Kenneth S. Pelsinger, LLC

                                                By: _____
                                                    Kenneth S. Pelsinger (kp 4039)

Attorney for Plaintiffs
3601 Hempstead Turnpike
Suite 410
Levittown, NY 11756
(516) 784-5225